IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRAD R. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-577-BMJ |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Brad R. Williams, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (Commissioner), denying Plaintiff's application for supplemental security income. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. The Commissioner has answered and filed the administrative record (AR) [Doc. No. 13], and both parties have briefed their respective positions. For the reasons stated below, the Commissioner's decision is reversed and remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.    Procedural History**

On August 27, 2012, at forty-seven years of age, Plaintiff protectively filed applications for both disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI respectively of the Social Security Act (SSA), alleging a disability onset date of July 28, 2009. *See* AR 12, 20, 66, 75, 188, 191. The Social Security Administration denied both applications initially and upon reconsideration. At an administrative hearing held on June 17, 2014, Plaintiff voluntarily withdrew his application for DIB and requested his alleged onset date

be amended to August 27, 2012, the date of his application. AR 41-42. The Administrative Law Judge (ALJ) issued an unfavorable decision October 31, 2014. AR 12-21. On March 27, 2015, the Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. Plaintiff seeks judicial review of the Commissioner's unfavorable decision.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also* 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since August 27, 2012, the amended onset date. AR 14. At step two, the ALJ found Plaintiff has the following severe impairments: "status post rotator cuff syndrome, status post surgical ankle and elbow enthesopathies, gouty arthritis, and degenerative disc disease of the lumbar spine." AR 15 (*citing* 20 C.F.R. 416.920(c)). At step three, the ALJ concluded Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal the severity of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 (the Listings). AR 17. The ALJ then formulated Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a). He can lift/carry 10 pounds occasionally. He can stand/walk for six hours during an eight-hour day and sit for six hours during an eight-hour day except that he can sit up to 30 minutes at a time and stand for five minutes at a time, then change position at the workstation without leaving the workstation. He cannot climb ladders, ropes, or scaffolds. He cannot kneel, crouch, or crawl. He can occasionally climb stairs, balance, and stoop. He cannot perform overhead reaching with the right upper extremity, and he can infrequently perform overhead reaching with the left upper extremity. He can perform fine fingering and gross manipulation frequently.

2

AR 17. At step four, relying on the testimony of a vocational expert (VE), the ALJ found Plaintiff unable to perform his past relevant work (PRW) as a roughneck/roustabout or delivery driver. AR 19. At step five, the ALJ again relied on the VE's testimony and determined Plaintiff was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy, including the representative sedentary, unskilled occupations of semiconductor bonder, stuffer and final assembler of optical goods. AR 20-21. After concluding, in accordance with Social Security Ruling (SSR) 00-4p, that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT), the ALJ determined Plaintiff has not been disabled within the meaning of the SSA since August 27, 2012. AR 20-21; *see* SSR 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000).

### III. Plaintiff's Claims

Plaintiff advances two claims of error: (1) the ALJ failed to recognize that Plaintiff "fell within a borderline age situation," an error that was not remedied by the Appeals Council's "post hoc rationalizations" in its order denying Plaintiff's request for review; and (2) the ALJ's RFC assessment pertaining to Plaintiff's reaching capacity was legally flawed and not supported by substantial evidence.

### IV. Standard of Review

"In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citation omitted). Judicial review of the Commissioner's final decision is limited to determining whether substantial evidence in the record as a whole supports the factual findings and whether the ALJ applied the correct legal standards. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (citation omitted).

V.  **Analysis**

   A.  **Application of the Borderline Age Policy**

The ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, (the grids), as a framework for her disability determination. The grids are intended to help ALJs make uniform, efficient decisions about the types and numbers of jobs existing in the national economy for certain classes of claimants. *Heckler v. Campbell*, 461 U.S. 458, 468 (1983). The grids are applicable, however, "only when they describe a claimant's abilities and limitations accurately." *Id.* 461 U.S. at 462 n. 5; *see also Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). The ALJ stated that if Plaintiff had had the "residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.21." AR 20. Indeed, Rule 201.21 directs a finding of "not disabled" for "younger individuals" ages 46-49, with at least a high school education, even if they are limited to sedentary work and have no transferable job skills. Because Plaintiff could perform less than the full range of sedentary work, the ALJ could not, and did not, directly apply Rule 201.21 to reach a finding of "not disabled."

But one of the basic premises underlying the grids is that the older a person is, the harder it will be for him to adapt to a new vocation. Here, the ALJ did not take into account the fact that Plaintiff would turn fifty-years-old, defined in the grids as a person "closely approaching advanced age," (ages 50-59) on December 18, 2014, less than two months after the ALJ's unfavorable decision. In such situations, the regulations afford an ALJ some latitude in the application of the grids and affirmatively state that the Commissioner "will not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 416.963(b). "A 'borderline situation' exists when there would be a shift in result caused by the passage of a few days or months." *Daniels v. Apfel*, 154 F.3d 1129, 1133 (10th Cir. 1998) (*quoting* SSR 82-46c, 1982 WL 31427, at \*6) (holding ALJ erred in not addressing the borderline age issue when claimant was within 65 days short of the next category when ALJ issued the decision); *see also Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (claimant seven months short of next category did not fall within a borderline situation preventing application of the grids). In this case, had Plaintiff turned fifty before the ALJ rendered her unfavorable decision, Rule 201.14 would have directed a finding of "disabled."

Plaintiff raised this issue before the Appeals Council. In denying his request for review, the Appeals Council stated:

> The Council also does not find that there are sufficient vocational adversities to warrant application of the borderline age policy in this case. The residual functional capacity is actually for a range of work between sedentary and light and your vocational profile does not show any additional factors that would hinder the adaptation to alternate substantial gainful activity.

AR 2.

The Appeals Council's comment is not binding on this Court. The Supreme Court has addressed the issue of when the decision of the Appeals Council becomes the final decision of the Commissioner:

> SSA regulations provide that, "if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision. *See* 20 CFR §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a) (1999).

*Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). In *Sims*, the Court specifically recognized that regulations governing Title XVI cases regarding this issue are not materially different from those governing Title II cases and elected to omit the latter citations. *Id.* at n. 2.

For purposes of this judicial review, the final decision of the Commissioner is embodied in the ALJ's disability determination. 20 C.F.R. §416.1481 (decision of administrative law judge is binding if Appeals Council denies review). On remand, the Commissioner should consider Plaintiff's borderline age situation in determining whether Plaintiff is disabled.

### B. The RFC

Plaintiff challenges the ALJ's RFC determination as legally flawed and unsupported by substantial evidence. First, Plaintiff contends the ALJ neglected to include a narrative statement citing specific medical and non-medical evidence and describing how that evidence supports the conclusions in the RFC. Plaintiff further contends that the ALJ's finding that Plaintiff could reach overhead with his left arm "infrequently," is not supported by substantial evidence in the record, especially in light of the findings of limited left shoulder mobility by two consultative examiners, Plaintiff's testimony, and Dr. Kalen Rogers' statement that he could not lift his arms above the horizon. AR 15, 18-19, 43-44, 303, 424, 427.

The ALJ found Plaintiff could perform "less than a full range of sedentary work." AR 17. Included in the RFC were limitations on overhead reaching. The ALJ found Plaintiff could never reach overhead with his right arm and "infrequently" with his left arm. *Id.* The terms "frequently," "occasionally," and "activity or condition does not exist" are the terms used by the DOT to quantify the amount of time a worker would be required to perform a particular activity for a given job. These terms are defined in the DOT. "Occasionally: activity or condition exists up to 1/3 of the time. Frequently: activity or condition exists from 1/3 to 2/3 of the time." *See* 713.687-018 FINAL ASSEMBLER, DICOT 713.687-018. Thus the term "infrequently" is not meaningful in this context. All three sedentary jobs identified by the VE require either occasional or frequent reaching.

Moreover, the ALJ specifically questioned the VE about the impact on the number of jobs available in the national economy if the hypothetical person could reach in all directions only "infrequently." AR 63. The VE replied that a requirement for "infrequent" reaching would limit the number of available jobs. She added, "not everything is directly in front of a hypothetical person performing these tasks." *Id*. Despite the VE's testimony, and the fact that the ALJ's RFC included a limitation to "infrequent" overhead reaching with Plaintiff's left arm, the ALJ nevertheless found Plaintiff capable of performing the jobs identified by the VE. But the ALJ's decision is deficient as a matter of law. Because the ALJ used the undefined term "infrequent" to describe Plaintiff's reaching limitation, it is impossible to assess from the testimony of the VE whether jobs would exist in significant numbers in the local or national economies. On remand, the ALJ should use precisely defined terms in her hypothetical questions to the VE and in her RFC determination.

## VI.     Conclusion

The ALJ erred as a matter of law in failing to consider Plaintiff's borderline age situation in applying the Medical-Vocational Guidelines. Additionally, the ALJ's RFC determination is based on an imprecise hypothetical question to the VE resulting in a decision that is legally deficient and not supported by substantial evidence. Accordingly, the Commissioner's final decision is reversed, and the cause is remanded for further proceedings consistent with this Memorandum Opinion.

ENTERED this 1st day of September, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE